UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| MICHELLE R. RODRIQUEZ | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) CAUSE NO. 3:16-CV-416-PPS-MGG |
| NANCY BERRYHILL,[1] Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Michelle R. Rodriquez appeals the Social Security Administration's decision to deny her application for Social Security disability benefits. An administrative law judge found that Rodriquez was not disabled within the meaning of the Social Security Act. Rodriquez raises a number of challenges to this determination, but I conclude that the ALJ's decision was supported by substantial evidence. I will, therefore, affirm the decision of the ALJ.

**Background**

At the time of her hearing before the ALJ, Michelle Rodriquez was 47 years old. [DE 9 at 61.][2] She was educated through the 11th grade, never received any further

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, as defendant in this suit.

[2]The administrative record is found in the court record at docket entry 9, and consists of 1786 pages. I will cite to its pages according to the Court's Electronic Case

1

work training, and did not have a driver's license. [*Id.* at 62, 78.] Rodriquez worked in the past as a production assembler, retail cashier, window assembler, and waitress. [*Id.* at 364.] She owned and operated her own day care center for ten years, *id.* at 63, but quit in 2010 due to the strain on her back caused by lifting the children, *id.* at 64. Rodriquez has not worked since closing her day care center. [*Id.* at 63.] She claims that she is disabled and unable to work because of her back pain, migraines, and bipolar disorder. [*Id.* at 74.]

Rodriquez has a history of back pain beginning in 2004. [DE 9 at 737.] She received nerve blocks, various injections, and medication management in attempts to alleviate her back pain. [*Id.* at 612, 629, 635, 1442.] None of the treatments helped lessen her pain. [*Id.* at 1442-45.] MRIs taken in 2005 showed that Rodriquez suffered from degenerative disc disease. [*Id.* at 454.] Rodriquez underwent three back surgeries between 2006 and 2007: two on her lower back and one on her cervical spine. [*Id.* at 96.] These procedures resulted in a diagnosis of "failed back surgery syndrome." [*Id.* at 900.] Recently, the radiculopathy in her extremities necessitated a leg surgery to relieve stress caused by her antalgic gait. [*Id.* at 86.]

Rodriquez's record of migraine headaches begins in 2003. [DE 9 at 645.] According to Rodriquez, her headaches are constant and get worse with her back pain or stress. [*Id.* at 333.] She says she experiences migraine headaches two to three times a

Filing page number, rather than by the Social Security Administration's Bates stamp numbers, which don't begin until page 7 of 1786 as the pages are enumerated in ECF.

month. [*Id.*] Rodriquez went to the emergency room for severe migraines every year from 2003 to 2012. [DE 17 at 4.] Her migraine pain caused her to seek emergency treatment every three to four months. [DE 9 at 69.] However, treatment notes from Fall 2012 indicate that Rodriquez was doing well managing her migraines with medication. [*Id.* at 1657.]

Rodriquez also reported problems with "bipolar and a little bit of depression." [*Id.* at 1374.] She was diagnosed with bipolar disorder nearly fifteen years ago. [*Id.*] While describing her symptoms to consultative examiner Alan Wax, Ph.D., she said that "[o]ne minute I'm okay and the next minute I'm sad." [*Id.*] Dr. Wax reported that Rodriquez's "mood and affect were flat, but, as noted, the claimant was heavily medicated." [*Id.* at 1375.] Rodriquez later testified that her bipolar disorder impairs her work ability because "some things come back to me and I can't concentrate." [*Id.* at 74.]

At the hearing, Rodriquez appeared with crutches prescribed after a recent foot surgery. [DE 9 at 79.] She testified that she experiences constant back pain that radiates down both legs. [*Id.* at 65-66.] She claims that her pain medication is only somewhat effective in dulling her pain. [*Id.* at 66.] Even after taking medication, Rodriquez rated her pain to be a 7 out of 10 at the hearing. [*Id.*] Rodriquez also testified that she experiences migraines at least twice a month that each last about four to five hours. [*Id.* at 68.] She further claimed that her prescribed migraine medication is effective but causes short term memory loss. [*Id.* at 70.] Rodriquez also said that her mental

3

deficiencies are exacerbated by her bipolar disorder, which causes shakiness and twitching that, in turn, prevents her from working. [*Id.* at 71.] Rodriquez further testified that she struggles with urination issues and incontinence. [*Id.* at 84.]

While describing an average day, Rodriquez said that most of her day consists of watching television and occasionally visiting with her boyfriend's brother across the street. [*Id.* at 80.] She said she elevates her legs throughout the day to alleviate pain. [*Id.* at 84.] However, she claimed that she retains the ability to push and pull, grip objects, and complete small household chores like dishes. [*Id.* at 75, 78.] Rodriquez also said she is still able to read books, play card games, and attend church. [*Id.* at 76-77.]

In terms of future treatment, Rodriquez said that her doctors recommend another back surgery on both her upper and lower back. [*Id.* at 89.] Although Medicaid would cover the surgery, Rodriquez refuses to undergo the procedure with anyone other than her treating physician, Dr. Gottlieb. [*Id.*]

Rodriquez filed her application for supplemental security income on June 18, 2012, and alleged a disability onset date of December 1, 2011. [DE 9 at 28.] Her claim was denied initially and upon reconsideration. [*Id.*] On January 21, 2013, an ALJ held a video hearing in Fort Wayne, Indiana for which Rodriquez appeared in Elkhart, Indiana. [*Id.*] The ALJ then issued an unfavorable decision denying Rodriquez disability benefits on May 21, 2014. [*Id.*]

In reaching her decision, the ALJ used the five-step disability evaluation process.

At Step One, she found that Rodriquez was not engaging in substantial gainful activity. [DE 9 at 30.] At Step Two, the ALJ found that the claimant had the following severe impairments: degenerative disc disease, osteoarthritis, and migraines. [*Id.*] However, she determined at Step Three that these impairments were not "severe" according to 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.* at 34.] The ALJ found that Rodriquez had the residual functional capacity ("RFC") to perform light work with frequent fingering, pushing, and pulling with her left upper extremity and occasional climbing and balancing. [*Id.*] At Step Four, the ALJ concluded that Claimant is able to perform her past relevant work as a production assembler, ultimately concluding that Rodriquez was not disabled. [*Id.* at 37.]

## Discussion

Rodriquez makes three arguments each of which she believes calls for a remand. I will consider each argument below, but in doing so I must keep in mind that review of the Commissioner's decision is limited. If an ALJ's findings of fact are supported by "substantial evidence," then I must affirm the decision. *See* 42 U.S.C. § 405(g); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In making a substantial evidence determination, I must review the record as a whole, but I cannot re-weigh the evidence or substitute my

5

judgment for that of the ALJ. *Id.*

To reach her decision, the ALJ gave "little weight" to the opinion of Rodriquez's treating physician, Dr. Jamie Gottlieb. The ALJ found that Rodriquez suffers from spinal degeneration but otherwise has no significant symptoms that would support Dr. Gottlieb's opinions, which the ALJ characterized as "extreme." [DE 9 at 37.] The ALJ attributed the most weight to the medical opinion of the state agency physicians who determined that Rodriquez could perform light work with minimal postural and environmental restrictions. [*Id.*] As such, the ALJ found that Rodriquez "has no more than mild restriction in activities of daily living, no difficulties in social functioning, and mild difficulties in concentration, persistence, or pace." [*Id.* at 33.]

Rodriquez first argues that the ALJ failed to properly evaluate all medical opinion evidence, primarily the opinion of her treating physician, Dr. Jamie Gottlieb, DE 17 at 16, who opined that Rodriquez could not work even in a sedentary job and recommended full disability, DE 9 at 1442. Rodriquez argues that the ALJ did not engage in the requisite analysis to determine the appropriate weight that should be given to a treating physician's opinion. [*Id.* at 17.] Rodriquez also claims that the ALJ did not provide specific evidence to show the inconsistency between Dr. Gottlieb's opinion and the objective medical evidence. [*Id.*] At bottom, Rodriquez argues that remand is necessary because it is unclear how the ALJ decided to give Dr. Gottlieb's opinion little weight. [*Id.* at 20.]

6

A treating physician's medical opinion is generally afforded controlling weight if it is supported by medically acceptable diagnostic techniques and consistent with the other medical evidence on record. 20 C.F.R. § 404.1527(d)(2). It is in the ALJ's purview to discount the treating physician's opinion, but she must provide "good reasons" to explain the weight given to the opinion and support these reasons with evidence. SSR 86-2p, 1996 WL 374188 (July 2, 1996); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also consider such factors as the length, nature, and extent of the treatment relationship, frequency of examination, the physicians's specialty, and the types of tests performed. *E.g.*, *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). I must allow the ALJ's decision to stand "so long as the ALJ minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (internal quotation and citation omitted).

Here, the ALJ sufficiently supported her reasoning for affording Dr. Gottlieb's opinion only little weight. In September 2011, Dr. Gottlieb provided the following medical statement:

> Michelle Rodriguez has been a patient of mine for prolonged [sic] period of time. She has undergone laser lumbar and also reconstructive surgery. She continues to have significant pain symptoms with adjacent segment degeneration. She has had injections, medication management without significant relief. We are going to have to consider possible revision and surgical reconstruction of both cervical and lumbar spine. Currently, she routinely has intractable bouts of pain that come on a daily basis. The only way she can get relieve [sic] is when she lays down for periods of 45 minutes. Given all this, *I do not believe she can viably work even sedentary type job [sic]. I am recommending her full disability.*

7

[DE 9 at 1442 (emphasis added).] Dr. Gottlieb further opined in September 2012 that Rodriquez could not walk a single city block, could sit or stand for only five minutes at a time, and could use her hands and fingers 0-5% of an 8-hour workday. [DE 9 at 1590-91.] After considering the medical record, the ALJ decided to give little weight to the opinions of Dr. Gottlieb, explaining that "they are extreme in light of the examination and treatment records as well as recent diagnostic imaging showing continued spinal degeneration, but no other significant abnormalities." [DE 9 at 37.]

The ALJ identified substantial evidence in the record that contradicts Dr. Gottlieb's opinion. This evidence includes:

- In September 2012, Rodriquez was observed to sit comfortably in a chair without needing to walk or move during a consultative examination with Dr. Frances Dwyer. [DE 9 at 36.]

- Dr. Dwyer opined that while Rodriquez suffered from back pain, she was able to live independently and would only have a small amount of disability. [*Id.*]

- In April 2013, Rodriquez denied back pain and headaches during an examination. [*Id.*] The ALJ cited to a doctor's note that Rodriquez was "negative for back pain." [DE 9 at 37 (citing to DE 9 at 1695).]

- In May 2013, Rodriquez had full range of motion in her spine and extremities and showed only mild lumbar tenderness. [*Id.*]

- The state agency physicians concluded that Rodriquez was able to perform light work with few limitations. [*Id.*]

- Rodriquez testified at the hearing that she was able to use her hands to wash dishes and play card games. [*Id.* at 35.]

- Rodriquez's recent reports of back pain are attributable to re-

8

> injuries, such as slip and falls on ice and a car accident, rather than resulting from a chronic condition. [*Id.* at 35-36.]

- Recent diagnostic imaging showed continued spinal degeneration, but no other significant abnormalities. [*Id.* at 37.]

- Although it is true that Rodriquez had three surgeries on her back in 2006 and 2007, she returned to work for three more years after those surgeries, as the ALJ pointed out. [*Id.* at 35.]

The Seventh Circuit "upholds all but the most patently erroneous reasons for discounting a treating physician's assessment." *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010). Moreover, if the evidence is such that reasonable minds could differ on whether or not the claimant is disabled, the ALJ's conclusion is not remandable. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000)). The ALJ identified and discussed several pieces of evidence that contradicted Dr. Gottlieb's assessment. I find, therefore, that the ALJ provided a sufficient explanation for giving Dr. Gottlieb's opinion only little weight in her decision.

Rodriquez also argues that the ALJ cherry-picked evidence from the record to support her decision to give Dr. Gottlieb's opinion little weight. This argument is not supported by the record. The ALJ stated that there is evidence in the record that "somewhat support[s] [Rodriquez's] allegations. However, more recent imaging has shown few abnormalities and her presentation has been somewhat questionable." [DE 9 at 37.] The ALJ clearly acknowledged Rodriquez's medical history and past back surgeries, but decided that the evidence was too inconsistent to find Rodriquez

9

disabled.

Rodriquez further argues that the ALJ did not consider the regulatory factors set out in 20 C.F.R. § 416.927(c) when she discounted the limitations Dr. Gottlieb placed on Rodriquez. While the ALJ did not announce that she was addressing the factors and evaluate them consecutively, the ALJ acknowledged many of the factors in her opinion. She noted that Dr. Gottlieb performed one of Rodriquez's surgeries in 2007, thus recognizing his speciality as a back surgeon. [DE 9 at 31.] She also stated that Rodriquez continued to have regular follow-up appointments with Dr. Gottlieb through 2012. [*Id.* at 31.] Therefore, the ALJ acknowledged the longstanding doctor-patient relationship. The ALJ considered the factors that she was required to consider.

I concede that it is a close call whether the ALJ should have rejected the opinion of the treating physician. But if the standard of review is to mean anything, then in cases like this one where the ALJ supports her findings with substantial evidence, even when it contradicts the opinion of the treating physician, my press box view of the case should yield to the ALJ's on-the-field perspective. Because the ALJ supported her rejection of the treating doctor with substantial evidence, Rodriquez's first argument must be rejected.

Second, Rodriquez argues that the ALJ improperly discounted her testimony for reasons that are patently wrong. [DE 17 at 20.] She argues that the ALJ discredited her allegations by "finding inconsistencies where they did not actually exist, and even

mischaracterizing [Rodriquez's] testimony." [*Id.* at 21.] The ALJ's credibility determinations are entitled to deference because the ALJ is "in a special position to hear, see, and assess witnesses." *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). But courts have more freedom to review credibility determinations when they are based on objective factors. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). In the end, I will reverse an ALJ's credibility finding *only* if the claimant can show that it was patently wrong. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (emphasis added).

In this case, the ALJ adequately explained why she discredited some of Rodriquez's allegations and her explanation was not unreasonable. Many of the inconsistencies that the ALJ identified between Rodriquez's account of her symptoms and the record have already been discussed. This included her conflicting hearing testimony, the likelihood that flare-ups in Rodriquez's back pain were due to re-injury rather than a chronic condition, and evidence of recent improvement. [*Id.* at 35-37.] Rodriquez claimed that she required an assistive device to walk but "was observed and was not using the cane and was walking without a limp" when approaching the building for her consultative examination with Dr. Frances Dwyer in September 2012. [*Id.* at 1378.] The ALJ also found that the Rodriquez made contradictory statements to medical personnel. At the Elkhart General Hospital emergency room, Rodriquez stated that she was sent home from her recent visit to Unity Hospital because the doctor was on vacation, but the record shows that the treating physician wanted her to stay one

11

more day and she insisted on leaving. [*Id.* at 36.]

Rodriquez also testified that she retained the ability to perform certain household chores and leisurely activities. The ALJ is allowed to consider whether the claimant's daily activities are inconsistent with her alleged inability to work outside of the home. *Oakes v. Astrue*, 258 F. App'x 38, 43 (7th Cir. 2007). Rodriquez argues that the ALJ mischaracterized her testimony regarding the use of her hands. [DE 17 at 22.] According to Rodriquez, the ALJ erroneously claimed that Rodriquez testified she is not able to hold a cup of coffee without dropping it but later stated that she is able to wash the dishes. [*Id.*] Rodriquez argues that the ALJ was creating inconsistency in her testimony in order to discredit her allegations. [*Id.* at 23.] She says that the ALJ "may have assessed more restrictive limitations in hand-use" had she correctly interpreted the testimony. [DE 23 at 4.] But the testimony does not support what Rodriquez suggests in her brief. Rodriquez testified, "I picked [a cup of coffee] up and it fell all over me. And that's happened a lot." [*Id.* at 71.] Rodriquez now says that she was referring to an isolated incident, DE 17 at 22, but that is not what her hearing testimony says. The ALJ was not creating inconsistency among Rodriquez's allegations.

In addition, a claimant must do more than point to a different conclusion that the ALJ may have reached to show that the credibility determination is patently wrong. *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). The ALJ did, in fact, include other evidence of Rodriquez's poor fine manipulative skills described in Dr. Dwyer's

treatment notes. [DE 9 at 34.] The ALJ reached her determination after weighing the complete record and I cannot reweigh the evidence anew and impose my own judgment above that of the ALJ. *Ketelboeter v. Astrue*, 550 F.3d 620, 624 (7th Cir. 2008).

While there are some gaps in her reasoning, the ALJ did provide "some legitimate reason for [her] decision" and built a logical bridge from the evidence to her conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). The Seventh Circuit has held that even a minor discrepancy among a claimant's statements coupled with observations of the claimant during the hearing is sufficient to support an ALJ's credibility finding. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (citing *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)). What's more, a credibility determination is patently wrong only when it lacks *any* explanation or support. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (emphasis added). I cannot reverse the ALJ's credibility determination merely because reasonable minds could differ on the credibility of Rodriquez's subjective statements. *Id.* (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). Therefore, I find Rodriquez's second argument unpersuasive.

Finally, Rodriquez argues that the ALJ erred in her RFC determination by failing to account for Rodriquez's urinary frequency and incontinence. [DE 17 at 23.] Rodriquez claims that remand is necessary because the ALJ's hypotheticals posed to the vocational expert ("VE") did not fully set forth her impairments. [*Id.* at 24.] However, she concedes earlier in her brief that the ALJ never reached Step Five of the analysis

13

because Rodriquez's claim for benefits was denied upon the ALJ's Step Four finding. [*Id.* at 16.] But even if the ALJ had reached that step in the disability evaluation where the burden shifts to the Commissioner, it remains the claimant's burden to prove the existence of a disability. *See* 20 C.F.R. § 404.1512; *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984). It is true that the ALJ must present all impairments that are supported by the medical evidence, *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994), but the ALJ only has to present those limitations to the VE that she finds credible. *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007).

Rodriquez claims that the ALJ ignored the evidence of her incontinence issues, DE 17 at 24, but this is simply untrue. The ALJ questioned Rodriquez about her urinary issues at the hearing. [DE 9 at 88.] Rodriquez's answers to the ALJ's follow-up questions established that Rodriquez's bladder issues affect her mostly at night, which would not affect her ability to hold a job. [*Id.*] It is the claimant's duty to present her best case, *see Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007), so she should have expanded on the limitation her incontinence issues place on her ability to work to the extent that was the case. And although the ALJ has a duty to develop the administrative record, it is the ALJ who determines how much evidence is enough. *See Kendrick v. Shalala*, 998 F.2d 455, 457 (7th Cir. 1993). The ALJ's follow-up questions discharged this duty.

From this testimony and the rest of the objective medical evidence, the ALJ

concluded that Rodriquez's bladder issues were not limiting enough to present to the VE. She was required only to incorporate impairments into her hypotheticals that she found credible. *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007) (finding that the ALJ posed appropriate hypothetical questions to the VE that did not include additional mental and physical limitations alleged by the claimant). Accordingly, the ALJ did not err by failing to account for Rodriquez's urinary issues within her hypotheticals directed to the VE.

## Conclusion

In sum, the ALJ's conclusion that Rodriquez was not disabled during the relevant time period is supported by the evidence highlighted in her opinion. And even if reasonable minds could differ concerning whether Rodriquez was disabled, I must defer to the ALJ's decision so long as it is adequately supported, as it is in this case. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

ACCORDINGLY:

The final decision of the Commissioner of Social Security denying plaintiff Michelle R. Rodriquez's application for a period of disability and disability insurance benefits is **AFFIRMED**.

The Clerk shall enter judgment in favor of Defendant and against Plaintiff.

**SO ORDERED**.

ENTERED: August 2, 2017.

   s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**